IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jean Stroud Sanders, ) | C/A No. 0:10-3130-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Jean Stroud Sanders ("Sanders"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In October 2006, Sanders applied for DIB, alleging disability beginning December 23, 2005. Sanders's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 15, 2010, at which Sanders, who was represented by Lisa L. Cotten, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on February 5, 2010 denying benefits and concluding that Sanders was not disabled. (Tr. 9-23.)

Sanders was fifty-two years old at the time of her alleged disability onset date. (Tr. 34.) She completed one year of college and has past relevant work experience as a dental assistant. (Tr. 138,

142.) Sanders alleges disability since December 23, 2005 due to limitations caused by diabetes, high blood pressure, a stroke, knee replacement, and arthritis. (Tr. 137.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since December 23, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis of the knees, status post total right knee replacement; right shoulder discomfort, status post surgical fixation; visual difficulties, status post bilateral cataract corrective surgery; and diabetes mellitus with neuropathy of the toes (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that work must require no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over six hours in an eight-hour workday with a 45-60 minute sit/stand option at the workstation; no crouching, kneeling, or climbing; no crawling or balancing; no overhead work with the right (non-dominant) arm; only occasional foot pedals or other controls with either lower extremity; and no driving at night secondary to visual halos. Moreover, that work must allow the claimant to avoid exposure to hazards such as unprotected heights and dangerous machinery.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on [REDACTED], 1953 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

\* \* \*

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a and 404.1568(d)).

* * *

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2005 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 11-23.) Sanders filed an appeal and submitted additional evidence for consideration, which the Appeals Council admitted into the administrative record. On October 21, 2010, the Appeals Council denied Sanders's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

    (1)    whether the claimant is engaged in substantial gainful activity;

    (2)    whether the claimant has a "severe" impairment;

    (3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)    whether the claimant can perform her past relevant work; and

    (5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Sanders raises the following issues for judicial review:

I. Sanders' application for benefits should be remanded for administrative consideration of new evidence which was submitted to the Appeals Council.

II. The ALJ did not perform the analysis of the treating and evaluating physician opinions required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

(Pl.'s Br., ECF No. 19.) Because analysis of the second issue affects that of the first, the court addresses these issues in reverse order.

## DISCUSSION

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if

it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' "
Id. (quoting Craig, 76 F.3d at 590).

**A.    ALJ's Decision**

Sanders argues that the ALJ erred in failing to properly apply the factors as specified in 20 C.F.R. § 404.1527(d) in evaluating the opinions of Dr. William Clark, one of Sanders's treating physicians.  The ALJ mentioned Dr. Clark's opinions several times in his opinion.  For example, the ALJ, in discussing Sanders's right knee condition, observed that Dr. Clark opined in July 2007 that this condition "has limited [Sanders's] ability to continue with her previously active lifestyle, while causing difficulty with rising from a sitting position, repeatedly or walking for 9 – 10 hours per day . . . ."  (Tr. 16.)  The ALJ noted that this opinion was not supported by any objective findings, observing that Dr. Clark had met with Sanders eight times from April 2007 through December 2009 but "his notes contain virtually no discussion of [Sanders's] knee condition."  (Id.)

The ALJ also specifically summarized Dr. Clark's opinions as follows:

> Dr. Clark has issued two separate medical opinions / medical source statements.  As explained above, in July 2007, he issued a statement in which he outlined the claimant's medical impairments and symptoms.  Therein, he concluded that the claimant was no longer able to perform her past work due to an inability to work with patients or to perform multiple tasks or complex tasks; his conclusion appears to be largely based on the claimant's assertion of decreased short term memory and her alleged difficulties with her diabetes.  More recently, in January 2010, Dr. Clark issued a medical source statement in which he outlined what he believed to be the claimant's retained functional capacity.  He indicated that the claimant could walk for less than one hour in an eight-hour workday; stand for less than one hour in an eight-hour workday; and sit for only one to two hours in an eight-hour workday.  He further indicated that the claimant could only lift up to 10 pounds occasionally.  Dr. Clark also posited that the claimant could not work full-time nor, in his opinion, could she perform a full range of sedentary work.  He also indicated that he expected no improvement.

(Tr. 18) (internal citations omitted).  The ALJ afforded these opinions little weight stating that (1) they appeared to be largely based on Sanders's subjective allegations alone; (2) Dr. Clark's treatment

notes failed to show objective support for his opinions; and (3) "numerous records from [Sanders's] specialized providers afford[ed] almost no support in favor of the statements made by Dr. Clark." (Tr. 21.)

Sanders attacks each of the reasons offered by the ALJ. First, Sanders disputes the ALJ's finding that Dr. Clark's opinion was based solely on Sanders's subjective complaints, pointing to Sanders's surgeries and numerous impairments. Sanders also directs the court to the fact that one of Dr. Clark's opinions included a primary diagnosis of cervical disc disease and a secondary diagnosis of osteoarthritis of the spine and knee, which Sanders argues is supported by an x-ray and MRI testing.[1] Second, Sanders argues that the ALJ erred in failing to cite specific findings from Dr. Clark's treatment notes that contradict his opinion. Finally, she argues that Dr. Clark's opinion is well supported by the record as a whole.

Having reviewed the record, the parties' arguments, and the ALJ's opinion, the court finds that Sanders has failed to demonstrate that the ALJ's decision with regard to Dr. Clark is unsupported by substantial evidence or controlled by an error of law. Sanders's reliance on her various diagnoses are insufficient alone to render the ALJ's determination unsupported. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986) (indicating that a diagnosis is insufficient to establish disability as "[t]here must be a showing of a related functional loss"). Further, the court observes that the ALJ's opinion contains a detailed discussion of Sanders's impairments and the medical records from Sanders's various providers regarding each of them. (See generally Tr. 15-20.) The

---

[1] Although not listed as an issue in this appeal, Sanders briefly mentions that "the ALJ did not demonstrate that he adequately considered the combined effect of impairments." (Pl.'s Br. at 36, ECF No. 19 at 36.) However, for the reasons discussed below, Sanders has not shown that remand is warranted for further consideration of her impairments, as the record does not demonstrate any related functional loss from her alleged spinal impairments. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986) (indicating that a diagnosis is insufficient to establish disability as "[t]here must be a showing of a related functional loss").

ALJ's determination that these records do not support Dr. Clark's limitations is supported by substantial evidence. For example, the ALJ observed with regard to Sanders right knee impairments that in 2004 she presented to Dr. James A. O'Leary, a treating specialist, with complaints of knee pain and discomfort and had a right knee arthroscopy to repair tears (Tr. 180-82); that after continued reports of right knee pain, in December 2005, she had a total right knee arthroplasty (Tr. 203-08, 213-14); that in August 2006 Dr. O'Leary reported that her right knee was doing fairly well despite occasional aches and pains and that her gait looked very good with good stability and range of motion (Tr. 219); that the record does not indicate any treatment for knee pain again until December 2008, when Dr. Edwin V. Martinez de Andino opined that x-rays showed that her left knee had minimal joint space narrowing and her right knee was within normal limits (Tr. 354-55); that in April 2009, Dr. Martinez de Andino indicated that her osteoarthritis was stable and was without complications while on medication (Tr. 353).

Similarly, with regard to Sanders's shoulder limitations, the ALJ observed that in May 2008 she first reported shoulder pain after falling and Dr. David K. Lee, a treating specialist, performed surgery (Tr. 329-30); that although initial reports demonstrated some concerns such as settling and a possible future total shoulder replacement, Dr. Lee ultimately removed the rod and performed a right shoulder hemiarthroplasty in August 2008 (Tr. 347-50, 332-35); that in September, October, and November 2008 reports indicated that she was doing better and improving, and was advised to continue therapy (Tr. 343-45); that in February 2009, Sanders reported and Dr. Lee found that she was improving and Dr. Lee advised her to follow-up as needed (Tr. 342); that in April 2009, Sanders discontinued her therapy prematurely with a good overall prognosis (Tr. 338); that in September 2009, Dr. Lee noted that Sanders was doing well with complaints of recent discomfort and Dr. Lee diagnosed right shoulder tendinitis, and prescribed medication (Tr. 341); and that later that month

Sanders reported that her pain was 70% improved on medication and that she had improved range of motion and Dr. Lee released her to engage in activities as tolerated (Tr. 340). In discussing her impairments, the ALJ specifically noted that Sanders had not seen an orthopaedist regarding her knee pain since August 2006; that she had been maintained with conservative care for her knee pain since December 2005 and for all of her conditions since August 2008; that she had not seen Dr. Lee since September 2009 at which time she was reportedly doing well; that she had not seen an eye specialist in over three years; and had not received any mental health treatment. The ALJ also found that Sanders's daily activities did not support her allegations of disability.

Further, as noted by the ALJ, Dr. Clark's own treatment notes do not appear to contain objective findings to support his opinions. While Sanders may point to selective medical records that could arguably support Dr. Clark's opinion, the court finds that the ALJ's decision is comfortably within the bounds of substantial evidence. See 20 C.F.R. § 404.1527(d)(2) (stating that a treating physician's opinion is only given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record"); Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

**B.     Evidence Submitted to the Appeals Council**

Sanders also argues that additional evidence submitted to the Appeals Council renders the ALJ's opinion unsupported by substantial evidence.[2] The record reflects that Sanders submitted four additional exhibits to the Appeals Council: (1) a letter from her attorney in the administrative proceedings; (2) a medical opinion from Dr. David Lee, dated April 22, 2010; (3) a letter from Dr. Clark, dated May 10, 2010; and (4) medical records from Dr. Lee, dated May 4, 2010 and June 2010. (Tr. 4, 118-20, 378-84.) Sanders argues that this evidence renders the ALJ's opinion unsupported because Dr. Clark's letter cites "numerous conditions that could support the findings he made in her RFC assessment" and resolved any doubt that Dr. Clark had simply based his opinion largely or solely on Sanders' subjective complaints, as suggested by the ALJ." (Pl.'s Br. at 28, ECF No. 19 at 28.) Sanders also argues that Dr. Lee's medical opinion provides support for Dr. Clark's opinions.

The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review " 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.' " Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. When a claimant seeks to present new evidence

---

[2] As part of this argument, Sanders appears to assert that remand of this matter is required pursuant to Harmon v. Apfel, 103 F. Supp. 2d 869 (D.S.C. 2000). However, since the filing of the briefs in this matter, the United States Court of Appeals for the Fourth Circuit has addressed this issue in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), and explicitly held that "[t]he Appeals Council need not explain its reasoning when denying review of an ALJ decision." Id. at 702. However, the Meyer court reversed and remanded the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits.

to the Appeals Council, she is not required to show good cause for failing to present the evidence earlier. Id. at 96 n.3; cf. 20 C.F.R. § 404.970(b).

Since the Appeals Council denied Sanders's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Accordingly, the court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence support[ed] the [Commissioner's] findings." Wilkins, 953 F.2d at 96.

The court observes that all of the additional evidence post-dates the ALJ's decision. As pointed out by the Commissioner and contrary to Sanders's assertion, Dr. Lee's opinion, dated June 2010, does not appear on its face to relate to the period on or before the ALJ's decision. Further, it is unclear how Dr. Lee's treatment of Sanders's shoulder pain would support his opinions concerning her ability to stand and sit. With regard to Dr. Clark's May 2010 letter, the court notes that it largely reiterates opinions expressed in his statement from July 2007, which the ALJ discounted. (Compare Tr. 381 with Tr. 295.) As stated above, Sanders has failed to demonstrate that the ALJ's decision to discount the July 2007 opinion is unsupported by substantial evidence. Therefore, the court finds that it is not reasonably possible that a subsequent version of this letter would have changed the ALJ's decision. Unlike in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), the additional evidence submitted to the Appeals Council in this case does not raise a question as to whether the ALJ's opinion is supported by substantial evidence.

**RECOMMENDATION**

For the foregoing reasons, the court finds that Sanders has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 17, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).